## Beaver Falls B. & L. Assn. v. Froimson et ux.

*P. H. Hamilton*, for plaintiff.
*Reed & Ewing*, for defendants.

READER, P. J., July 24, 1937.—The above-entitled case is before us on the petition of Beaver Falls Building & Loan Association, plaintiff in the judgment, asking that a satisfaction of the judgment, entered under the Deficiency Judgments Act of July 1, 1935, P. L. 503, be stricken off and the judgment reinstated.

The judgment was entered on November 25, 1932. Later, upon an affidavit of default, the amount due on the judgment was stated to be $14,488.43. The bond upon which the judgment was entered was dated July 11, 1932, and the real debt secured by it was $12,000. The bond was secured by a mortgage of the same date, which was recorded on June 29, 1932, in the office for recording deeds in and for Beaver County, in mortgage book vol.

259, page 431. The mortgage covered several lots of land in the City of Beaver Falls, Beaver County, Pa. On September 1, 1934, a writ of fi. fa. was issued upon the above-entitled judgment at no. 9, December term, 1934. Upon this writ the sheriff levied upon the properties covered by the mortgage, and on November 26, 1934, he sold these properties to plaintiff, Beaver Falls Building & Loan Association, for the sum of $1,076.22. This sum was applied by the sheriff in payment of costs and taxes, nothing being applied upon the debt. The sheriff conveyed the property so sold to Beaver Falls Building & Loan Association by deed dated December 8, 1934, recorded December 10, 1934, in the office aforesaid, in deed book vol. 420, page 268. On October 29, 1935, upon a motion made by counsel for defendants in the judgment, and approved by the court, the judgment was satisfied under the provisions of said Deficiency Judgments Act of 1935. Upon the appearance docket the satisfaction appears in the following terms:

"Now, October 29, 1935, on motion of Leonard L. Ewing, Esq., attorney for the above named defendants, the Court order the above judgment satisfied by the Prothonotary as provided for by the Act of Assembly of July 1, 1935, and said judgment is hereby satisfied.

"Philip J. McNally, Prothonotary."

Upon the judgment index of said judgment the entry of satisfaction is as follows: "10/29/35 Satisfied."

There is nothing before us to indicate that plaintiff had notice of the motion to satisfy this judgment under the Deficiency Judgments Act, or of the fact of such satisfaction until a later date, which is not definitely established.

On October 17, 1936, plaintiff, Beaver Falls Building & Loan Association, presented its petition praying that the satisfaction of the judgment be stricken off and that the judgment be reinstated. On December 12, 1936, an amended petition was filed more fully presenting the position of plaintiff, setting out the facts more in detail,

and with a like prayer. The petition avers substantially the facts which we have hereinbefore summarized, and also avers that the act of assembly under which the satisfaction was entered is unconstitutional, and that it has been declared to be unconstitutional by the Supreme Court of Pennsylvania.

On November 30, 1936, the Home Owners' Loan Corporation filed a petition for leave to intervene as a defendant, or respondent, in the proceeding of plaintiff to have the satisfaction stricken off. This petition avers that defendants in the judgment, David Froimson and Annette Froimson, executed and delivered to said corporation a mortgage dated April 27, 1936, recorded on April 30, 1936, in the office aforesaid in mortgage book vol. 299, page 402. It is averred that the debt secured by this mortgage is $6,559.50, and that it binds certain property designated as lots 1 and 2 in the Metamora plan of lots in the City of Beaver Falls, aforesaid, which lots were conveyed to said David Froimson and Annette Froimson by Almira Parks, by deed dated October 26, 1931, recorded in the office aforesaid in deed book vol. 403, page 236. The petition avers that the mortgage of Home Owners' Loan Corporation was placed at a time when the above-entitled judgment appeared as satisfied, the entry of satisfaction upon the judgment index being at the time hereinbefore quoted. The prayer of the petition of Home Owners' Loan Corporation is that the said satisfaction should not be stricken off and said judgment reinstated so as to give the same priority over the mortgage of Home Owners' Loan Corporation above referred to. This petition was resisted by plaintiff in an answer filed on December 16, 1936.

On May 26, 1937, we filed an opinion and order permitting Home Owners' Loan Corporation to intervene in the proceeding. On May 28, 1937, Home Owners' Loan Corporation filed an answer to plaintiff's petition and rule to strike off the satisfaction. In this answer it relies upon the record as to the satisfaction of said judgment, and

takes the position that the said satisfaction cannot be stricken off to the prejudice of the lien of its mortgage.

On December 7, 1936, defendants in the judgment, David and Annette Froimson, filed an answer to the petition and rule of plaintiff to have the satisfaction stricken off. This answer avers in substance the facts hereinbefore stated, except those particularly stated in the petition of Home Owners' Loan Corporation. It further avers that the fair market value of the properties sold to plaintiff for $1,076.22 at the time of said sale was $17,000; that defendants relied on the Deficiency Judgments Act and therefore did not present a petition to set aside the sale on the ground of inadequacy of price. The prayer of the petition is that the satisfaction of the judgment be not stricken off except on condition that plaintiff credit on its judgment the fair value of the property purchased by it at the sheriff's sale, as the same may be fixed by the court, or that defendants be permitted to file exceptions to the sheriff's sale nunc pro tunc.

No depositions were taken in the case, and no testimony was offered before the court. The case was argued by counsel on both sides upon the facts as presented in the pleadings. The facts as we have hereinbefore summarized them appear from the pleadings and are undisputed, except the facts stated in the answer of defendants filed on December 7, 1936, as to the fair value of the property.

Another proceeding between the same parties and involving the same questions is now before us. This is the proceeding by Beaver Falls Building & Loan Association to have stricken off the satisfaction of the judgment at no. 463, September term, 1934, D. S. B., which satisfaction was also entered under the provisions of the Deficiency Judgments Act of 1935. In that proceeding an opinion has been written setting out the particular facts involved in it. The following discussion in this proceeding covers the questions of fact and of law involved in both of the cases and is intended to be applicable to both.

Under the facts presented and hereinbefore summarized, two general questions are presented: First, as to the right of plaintiff to have the satisfaction stricken off and the judgment reinstated as between it and the original defendant; second, as to the right of plaintiff to have the satisfaction stricken off and the judgment reinstated as between it and the intervening party, Home Owners' Loan Corporation.

The first question seems to us to be clearly ruled in favor of plaintiff by the case of Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483. In that case defendants had executed a bond and mortgage to plaintiff, Beaver County Building & Loan Association, securing a loan made to them by the association. The bond and mortgage were executed on July 13, 1931. Because of a default in payments under the bond and mortgage plaintiff, on December 27, 1933, caused judgment to be entered on the bond, and on the same day issued a writ of execution under which the mortgaged premises were sold to plaintiff by the Sheriff of Beaver County on February 5, 1934. Plaintiff neglected to institute a proceeding to have the court determine the fair value of the property and fix the amount of the deficiency judgment. Defendants, on December 12, 1934, petitioned that the judgment be marked satisfied in accordance with the provisions of the Deficiency Judgments Act of January 17, 1934, P. L. 243. The prothonotary thereupon entered satisfaction of the judgment. On July 22, 1935, plaintiff filed a petition asking that the satisfaction be stricken off. Later the Court of Common Pleas of Beaver County dismissed this petition. On appeal to the Supreme Court the Deficiency Judgments Act of 1934 was held to be unconstitutional so far, at least, as it related to the the situation presented by the facts above stated. The rule instituted in the court below was reinstated and made absolute, with the effect of striking off the satisfaction of the judgment. In that case the bond and mortgage were executed and delivered,

and the loan secured thereby was made, prior to the enactment of the Deficiency Judgments Act of 1934. The question involved was limited to the rights of the original parties to the bond and mortgage. It was held that the Deficiency Judgments Act of 1934 impaired the obligation of the contract between the parties contained in the said bond and mortgage; that the act was therefore unconstitutional, and the satisfaction of the judgment under the provisions of the act was a nullity.

So far as relates to the original parties in the two proceedings now before us, the facts are identical with those in the Winowich case. In each of the cases now before us the bond and mortgage were executed and the loan consummated prior to the passage of the Deficiency Judgments Acts of 1934 and 1935. The contracts represented by said bonds and mortgages are to the same extent and in the same manner impaired by the Deficiency Judgments Acts. While the Winowich case, above recited, passed upon the Act of 1934 only, the reasoning of the court makes it necessarily applicable to the Act of 1935 as well, and the ruling has been extended to the latter act by the decision of the Superior Court in the case of Shallcross et al., Receivers, v. North Branch-Sedgwick B. & L. Assn., 123 Pa. Superior Ct. 593. In holding that the two cases cited rule the cases now before us as between the original parties to the judgment, we do not decide that in all cases acts done under a statute later declared to be unconstitutional are void and ineffective. The general rule in such cases is as stated by Judge Cooley, in the following language:

"When a statute is adjudged to be unconstitutional, it is as if it has never been. Rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made."

The decisions of the courts, however, have established many exceptions to this broad general rule, invoking the doctrines of res adjudicata, estoppel, mistake of law, and the acts of de facto officers, the courts having sustained many of the acts done and obligations incurred under the provisions of statutes afterwards held to be unconstitutional. The doctrine of res adjudicata and the doctrine of estoppel were recently applied in a case decided by Judge Finletter, of Philadelphia, involving the Deficiency Judgments Acts of 1934 and 1935: The Real Estate Trust Co. v. Kahler et ux., 30 D. & C. 206. In this case a mortgagee bought in a property at sheriff's sale under proceedings on a sci. fa. sur mortgage, paying only a nominal bid of $75. At the time the Deficiency Judgments Act of 1935 was in force. The mortgagee, purchaser of the property at the sheriff's sale, invoked the provisions of this act, filing a petition to have the property appraised and the amount of the deficiency judgment fixed by the court. The proceeding resulted in a deficiency judgment. After the Deficiency Judgments Acts were declared unconstitutional the mortgagee, plaintiff in the judgment upon which the property was sold, instituted a proceeding to have the deficiency judgment stricken off and the original judgment reinstated in its full amount in excess of the amount of the deficiency judgment. Judge Finletter held, however, that the mortgagee, plaintiff in the judgment, having himself invoked the provisions of the Deficiency Judgments Act and having proceeded to judgment therein, was precluded from opening the deficiency judgment both on the ground that the matter was res adjudicata, and on the ground that he himself was estopped by his conduct. In the opinion Judge Finletter cites several Pennsylvania cases in which the same principle was applied and the same or similar results reached.

The subject is dealt with much more extensively in an article by Frederick C. Fiechter, Jr., Considerations Re-

garding the Late Deficiency Judgment Acts, 41 Dickinson Law Review 75. In this article the author reviews rather exhaustively the cases which have established exceptions to the general rule stated by Judge Cooley in the language above quoted, for various reasons hereinbefore stated. The article is a very able and instructive one and shows that there are many exceptions to the broad general rule.

In view of the facts in the two cases now before us, however, we think it is certain that these cases fall within the general rule and not within any of the exceptions to it.

As above stated, the securities of plaintiff, the mortgages and the bonds upon which the judgments were entered, were executed, and the loans made upon the security thereof were consummated prior to the enactment of either of the Deficiency Judgments Acts. Plaintiff took no steps to avail himself of the provisions of those statutes. Defendants invoked the remedy provided by the statutes, and, so far as the evidence shows, without any notice to plaintiff.

We have also given consideration to the position taken by defendants to the effect that the satisfaction of these judgments should not be stricken off without requiring plaintiff to credit upon said judgments the fair value of the property purchased by it at the sheriff's sale. We are of the opinion that, in the absence of such statutory authority as was attempted in the Deficiency Judgments Acts, the court is without power to require plaintiff to enter such credit upon its judgments, or to fix a fair value of the properties sold, as a condition of reinstating the judgments. In the Winowich case it was held that the legislative attempt to reach this result was ineffective because it impaired certain contractual rights of plaintiff in such judgments. In the opinion in the Winowich case the court undertook to define what were the contractual rights between the mortgagee and mortgagor which would be impaired or destroyed by such legislation. The principles long established by the decisions of many of the courts are thus stated in the opinion of Justice Stern, at page 489:

"In determining what constitutes the obligation of a contract, no principle is more firmly established than that the laws which were in force at the time and place of the making of the contract enter into its obligation with the same effect as if expressly incorporated in its terms. . . .

"What, then, were the rights of a mortgagee under the law of Pennsylvania prior to the passage of the Mortgage Deficiency Judgment Act?

"The theory in our state has always been that a mortgage is merely collateral for the payment of some primary obligation, usually a bond. . . . As between the parties, both at law and in equity, it is a conveyance only so far as necessary to render the instrument effective as a security. . . . . The obligee could proceed either in personam or in rem. If in personam he could resort to all the property of the debtor not protected by exemption laws, and for this purpose could issue one execution after another until the full amount of the debt was realized. If the obligee chose to proceed by foreclosure of the mortgage, the sum realized at the sale on execution was credited against the indebtedness, and the mortgagee could then pursue his debtor on the bond for the balance. It was immaterial to the mortgagee's rights whether he himself or some third person became the purchaser of the mortgaged property at the sheriff's sale. . . . As such purchaser the mortgagee obtained a new status in no way dependent upon his previous relationship to the mortgagor, and of the same legal attributes as that of any other purchaser of real estate at a judicial sale. As between the parties themselves, however hard the consequences might sometimes be, the amount realized at the sale was conclusive as to the value of the property. . . . Therefore the deficiency judgment to which a mortgagee was entitled was the amount of the judgment, interest and costs, less the net proceeds received by him from the sale of the mortgaged property on foreclosure. The extent to which the debtor was released from personal liability was measured by the sale price, irrespective of the 'fair' value, the 'market' value,

the 'reasonable' value, or the 'actual' value, of the property."

It is apparent from this statement of fundamental principles that the fixing of the so-called fair value, or fair market value, of property sold on execution by the court is an impairment of the contractual right under existing law to have that value determined solely by the price brought at the execution sale. And such action further impairs the right of the creditor to receive payment in money rather than in some other form of property decreed by the court.

It seems clear to us that if we were to attempt to afford relief to defendants by an order requiring plaintiff to credit upon the judgments a value which we might fix upon the property purchased by plaintiff at the execution sales, we should be in effect undertaking to do by judicial decree that which the Supreme Court has said cannot be done by legislation, and should in effect be indirectly destroying the contract rights secured to plaintiff by the decision in the Winowich case.

It is further to be noted that there is no evidence before us from which we could determine the "fair value" or "fair market value" of the properties sold upon the judgments in question.

Defendants have also suggested that relief might be afforded them by permitting them to now file exceptions to the confirmation of the sheriff's sales upon the two writs in question, and to move that the sales so made be set aside on the ground of such gross inadequacy of price as amounts to fraud. This position is no doubt based upon the suggestion found in the concurring opinion of Chief Justice Kephart in the Winowich case. See also Hettler et al. v. Shephard, 326 Pa. 165.

It does not seem entirely clear to us, in view of the broad principles just considered, that we could pursue the course of setting aside the sales and fixing a price which must be realized at a subsequent sale before plaintiff could have

execution of his judgments. It still seems to us that this would also be an indirect method of defeating the clearly recognized and firmly established rights of the execution creditor. At any rate, in the cases now before us we are satisfied that the facts presented would not justify us in following such a course. The sales in question were confirmed on or about December 8, 1934. The titles to the property in question have been vested in plaintiff since the execution and delivery of the sheriff's deed on December 8, 1934. While defendants in their answer, hereinbefore referred to, state that so far as they are advised plaintiff still owns the properties purchased at these sales, there is no evidence before us from which we could find such a fact. Interests in these properties may have arisen which even an examination of the record would not disclose. We are of the opinion, therefore, that we would not be justified in entertaining at this time exceptions to the confirmation of said sheriff's sales or motions to set them aside.

For the reasons hereinbefore stated, we think the satisfaction of the above-entitled judgment, as well as the judgment at no. 463, September term, 1934, should be stricken off and the judgments reinstated as against defendants.

We come now to a consideration of the rights of the intervening defendant, Home Owners' Loan Corporation. As above stated, Home Owners' Loan Corporation made its loan to defendants and took its bond and mortgage hereinbefore referred to, to secure said loan at a time when plaintiff's two judgments in question were marked satisfied upon the record. There is no evidence before us to indicate that Home Owners' Loan Corporation had any knowledge with reference to the situation as to the judgments other than that afforded it by the state of the judgment index with reference to each. As hereinbefore stated, the judgment index of each judgment, in addition to the statement of the judgment itself, presents the following entry: "10-29-35, Satisfied". The long-established rule in our State is that a subsequent purchaser or mortgagee of

premises affected by a judgment need not look beyond the judgment index, unless there is something in the entry upon the index to put him upon notice that the satisfaction is in some manner qualified or conditional. This general rule is thus stated in the case of First National Bank of Spring Mills v. Walker et al., 296 Pa. 192, 196:

"The question thus arises, what notice was given by this record to persons having occasion to make examination. It is undoubtedly a general rule that a purchaser is not bound to look for judgments beyond the judgment index, and if his search discloses the existence of no liens entered there he may properly assume that no such lien exists. Likewise, if he finds an entry of satisfaction on the judgment index he has ordinarily a right to rely on such entry and assume the lien which formerly existed has been paid or otherwise disposed of. However, if the record discloses any circumstances, in addition to the entry of satisfaction, calculated to put the party on inquiry as to further information to be obtained with respect to the satisfaction of the judgment, it becomes his duty, in the exercise of ordinary diligence, to make inquiry. 'The record of a judgment properly entered and docketed is notice of what it contains or recites as well as of such facts as may be fairly inferred from its recitals': 34 C. J. 96. Such record carries with it 'constructive notice of all facts therein expressly recited as well as of such facts as might be fairly inferred from its recitals, but nothing more': Johnson v. Hess, 126 Ind. 298, 309. In Parke v. Neeley, 90 Pa. 52, this court, after stating that, although true as a general rule a purchaser need not look beyond the judgment docket for liens that should there appear, called attention to the fact that exceptions exist to this rule and that (page 59) 'whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, where the inquiry, if pursued, would lead to knowledge of the requisite facts.' "

In that case it was held that the entry upon the judgment index to the effect that satisfaction was entered "by decree of court" put all parties in interest upon notice and required them to examine the decree of court to determine what, if any, conditions might be attached to the satisfaction. In the instant case, however, there is nothing upon the judgment index to put the parties upon notice of anything which would render the satisfaction other than an absolute one. The principle stated in the case above cited and quoted from is recognized in numerous other cases: Coyne et al. v. Souther et al., 61 Pa. 455; Parke v. Neeley, 90 Pa. 52; Harner's Appeal, 94 Pa. 489; Lambert v. K-Y Transportation Co. et al., 113 Pa. Superior Ct. 82; Citizens National Bank & Trust Company of Lehighton v. First National Bank of Lehighton, 20 D. & C. 349.

We think it is clear, therefore, that Home Owners' Loan Corporation had a right to rely upon the record as shown by the judgment index with reference to plaintiff's judgments, and the right to act upon the assumption that the said judgments were fully satisfied. It follows that the satisfaction of plaintiff's judgments cannot be stricken off and those judgments reinstated so as to give them priority over the mortgage of Home Owners' Loan Corporation and the judgment entered upon its bond accompanying said mortgage at no. 416, December term, 1936, D. S. B.

The right of Home Owners' Loan Corporation to be protected against the striking off of the satisfaction of plaintiff's judgments is further supported by a very strong equity in its favor. While the pleadings before us do not establish beyond question the disposition of the proceeds of the loan secured by the mortgage of Home Owners' Loan Corporation, the answer of that corporation states that these proceeds were used to pay off prior liens upon the mortgaged property. This matter was discussed in the argument before the court, and with reference to this phase of the case counsel for plaintiff,

Beaver Falls Building & Loan Association, in his written brief makes the following statement:

"On April 27, 1936, defendants in the above stated judgments executed and delivered to the Home Owners Loan Corporation a bond and mortgage in the sum of $6559.50; said mortgage being recorded on April 30, 1937, in the Recorder's Office of Beaver County in Mortgage Book, vol. 299, page 402. The property included in this mortgage was subject to the lien of the judgments of the Beaver Falls Building & Loan Association, and the property included in said mortgage was, together with eight or nine other properties, in the mortgage held by the Peoples Building & Loan Association, securing an indebtedness of approximately $15,000. All of the properties included in the mortgage to the Peoples Building & Loan Association, the Beaver Falls Building & Loan Association, and the proceeds of the mortgage loan of the Home Owners Loan Corporation were used to pay off the balance due the Peoples Building & Loan Association, thus releasing, free of encumbrance, all of the remaining properties included in the Peoples Building & Loan Association mortgage, saving and excepting only therefrom the one property included in the Home Owners Loan Corporation mortgage. The various properties so released to the defendants by this procedure were worth approximately $8,000 or $10,000, yet due to the satisfactions being entered on plaintiff's judgments, plaintiff has been occasioned serious loss as a result thereof."

In our consideration of the case we have examined the record as found in the office of the Recorder of Deeds of Beaver County with reference to the matters suggested in the foregoing quotation from plaintiff's brief. We find that the defendants in plaintiff's judgment, David Froimson and Annette Froimson, had executed to Peoples Building & Loan Association a bond and mortgage dated August 18, 1931; the mortgage being recorded in said office in Mortgage Book vol. 305, page 447, on August 25, 1931. The real debt secured by the bond and mortgage is

$15,800, approximately the amount stated in the above quotation from the brief. Several properties were covered by the mortgage, among them lots designated as "1 and 2 in the Metamora Plan in the City of Beaver Falls", being the lots covered by the mortgage of Home Owners' Loan Corporation. On May 1, 1936, this mortgage to Peoples Building & Loan Association was satisfied on the record. This is approximately the date when the loan of the Home Owners' Loan Corporation to David Froimson and Annette Froimson, secured by its mortgage hereinbefore recited, was consummated. It is apparent, therefore, that what took place was that Home Owners' Loan Corporation, with the proceeds of its mortgage loan, paid off the mortgage loan of the Peoples Building & Loan Association. This mortgage was a lien upon the mortgaged premises prior to the judgments of plaintiff which are now under consideration. The judgments of plaintiff now under consideration were liens upon the properties embraced in the mortgage of Peoples Building & Loan Association, above recited, subject to that mortgage. If they had not been satisfied they would have remained liens upon these properties after the satisfaction of the mortgage of Peoples Building & Loan Association. It would have been highly inequitable, however, to permit them to take these properties in preference to the mortgage of the Home Owners' Loan Corporation, by reason of which the properties had been cleared from the mortgage of the Peoples Building & Loan Association.

If there were no other available remedy, we would have no doubt of the right of Home Owners' Loan Corporation to have the satisfaction of the mortgage of Peoples Building & Loan Association stricken off, and to be subrogated to that mortgage to the extent necessary to protect it for the advance made upon its own mortgage in payment of the Peoples Building & Loan Association mortgage. This equitable result, however, can be reached without the necessity of a proceeding to strike off the satisfaction of the Peoples Building & Loan Association mortgage, and

a proceeding to subrogate Home Owners' Loan Corporation to the same. The equitable right of Home Owners' Loan Corporation can be secured by giving effect to its legal right which we have hereinbefore discussed, the right, namely, to limit the striking off of the satisfaction of plaintiff's judgments so that, as to the premises bound thereby, the mortgage and judgment of Home Owners' Loan Corporation hereinbefore recited shall have priority to the reinstated judgments of plaintiff.

*Order*

Now, to wit, July 24, 1937, it is hereby ordered, adjudged, and decreed that the satisfaction of the judgment of Beaver Falls Building & Loan Assn. v. David Froimson and Annette Froimson, at no. 662, December term, 1932, D. S. B., be and the same hereby is stricken off, and said judgment is hereby reinstated as against the above-named defendants; the said judgment at no. 662, December term, 1932, D. S. B., as reinstated, is hereby postponed to the lien of the mortgage from David Froimson and Annette Froimson to Home Owners' Loan Corporation, dated April 27, 1936, recorded April 30, 1936, in the office for the recording of deeds, etc., in and for said Beaver County, in mortgage book, vol. 299, page 402, securing a debt of $6,559.50, and to the lien of the judgment entered upon the bond accompanying said mortgage, at no. 416, December term, 1936, D. S. B., in the Court of Common Pleas of Beaver County, so that said mortgage and judgment of said Home Owners' Loan Corporation shall have priority as to lien and payment over said judgment of Beaver Falls Building & Loan Association, so far as relates to the property bound by said mortgage of Home Owners' Loan Corporation, and the property embraced in the mortgage of Peoples Building & Loan Association, dated August 18, 1931, for $15,800, recorded in mortgage book, vol. 305, page 447.

From Wm. F. Schutte, Beaver Falls.